# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN BROWN,<br><br>       Plaintiff,<br><br>   v.<br><br>CONSTELLATION BRANDS, INC.,<br><br>       Defendant. | Case No. 1:17-cv-00590-BAM<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>(Doc. 13) |

Currently before the Court is Defendant Constellation Brands, Inc.'s ("Defendant" or "CBI") motion for summary judgment, or in the alternative, partial summary adjudication filed pursuant to Federal Rule of Civil Procedure 56 on July 19, 2018 (Docs. 13-20). Plaintiff Ryan Brown filed his Opposition on August 9, 2018 (Docs. 23-25), and Defendant filed a reply and objections on August 17, 2018 (Docs. 26, 27).

On October 2, 2018, the Court held a hearing on the motion before the Honorable Barbara A. McAuliffe, United States Magistrate Judge. Shelley Bryant appeared by telephone on behalf of Plaintiff Ryan Brown. Katherine Catlos appeared by telephone on behalf of Defendant Constellation Brands, Inc. Having considered the record, the parties' briefing and arguments, and the relevant law, the Court grants Defendant's motion for summary judgment.

## I. Background

This suit is a disability discrimination and retaliation action stemming from Plaintiff's termination from his employment at CBI. *See generally* Complaint ("Compl."), Doc. 1. According to the complaint, Plaintiff began working for CBI in or around July 1992. As of

1

September 22, 2016, when Plaintiff was terminated, he was a production worker in CBI's bottling department. Compl. at ¶ 11. In 2015, Plaintiff developed a chronic medical condition. Pursuant to his health care provider's directions, he requested intermittent medical leave to care for his condition. In December 2015, CBI granted his request. *Id.* at ¶ 12. Plaintiff also requested additional accommodation for his medical condition, which consisted of breaks to use the restroom as needed and leaving work early as needed. *Id.* at ¶ 13. In June 2016, Plaintiff required emergency surgery for a serious medical condition. Plaintiff's health care provider took him off work for approximately three weeks to care for this medical condition. Plaintiff allegedly applied for protected medical leave. *Id.* at ¶ 14. On August 3, 2016, CBI disciplined Plaintiff for having too many attendance infractions. Plaintiff complained about the discipline because some of the infractions counted against him occurred when he was on medical leave due to emergency surgery. He also complained because CBI assessed vacation time for part of the medical leave when the entire three weeks allegedly should have been considered medical leave time. *Id.* at ¶ 15. On September 19, 2016, Plaintiff became ill due to his chronic medical condition while driving to work. He called in sick to CBI and allegedly should have been allowed to use medical leave. *Id.* at ¶ 16. When Plaintiff went to work on September 20, 2016, CBI gave him a written warning and suspended him from work pending an investigation. CBI claimed that Plaintiff had accumulated 10½ attendance infraction points, which it considered excessive and grounds for termination due to absenteeism. Plaintiff explained to CBI that he became ill on his way to work due to his chronic medical condition for which he could take intermittent leave. Plaintiff also pointed out that his request for medical leave for surgery several months prior was still pending and the absences should not be counted as infractions under CBI's policy. *Id.* at ¶ 17. On September 22, 2016, CBI terminated Plaintiff's employment, claiming that he had excessive absences. *Id.* at ¶ 18.

Plaintiff believes that the reasons CBI gave for his termination were pretextual, and the true reasons for his termination are that CBI perceived him as disabled and unable to perform his job duties, that CBI did not want to accommodate his medical condition, that he took medical leave to care for his own serious medical conditions and that he requested accommodation. *Id.* at

¶ 19.

Plaintiff filed a charge of discrimination with the Department of Fair Employment and Housing ("DFEH") against CBI. Plaintiff received a "Right to Sue Letter" from DFEH dated March 15, 2017. *Id.* at ¶ 20 and Ex. A.

On March 27, 2017, Plaintiff filed this suit in the Madera County Superior Court, and CBI removed the action to this Court on April 26, 2017, invoking this Court's diversity jurisdiction. Doc. 1. By his complaint, Plaintiff alleges the following causes of action: (1) discrimination based on disability/perceived disability in violation of California Government Code § 12940; (2) failure to accommodate disability in violation of Government Code § 12940(m)(1); (3) retaliation for requesting accommodation in violation of Government Code § 12940(m)(2); (4) failure to engage in a timely, good faith, interactive process to determine effective reasonable accommodation in violation of Government Code § 12940(n); (5) failure to prevent discrimination in violation of Government Code § 12940; (6) retaliation for exercising rights under the California Family Rights Act ("CFRA") in violation of California Administrative Code, Title 2, § 11094; and (7) wrongful termination in violation of public policy.

Defendant's summary judgment in now before the Court for review.

## II.  Undisputed Material Facts[1]

Unless otherwise noted, the facts set forth below are uncontroverted. As necessary, the Court discusses further factual details in its analysis. The parties' legal conclusions or assertions are not considered facts.

Defendant CBI owns and operates Mission Bell Winery in Madera, California. (Doc. No. 20, Declaration of Roman Noriega, ¶ 1.) Plaintiff began working for CBI in 1992, and by 2016,

---

[1]  In determining which facts are undisputed, the Court relies on CBI's moving papers (Doc. No. 14) and Statement of Undisputed Facts ("SUF"), (Doc. No. 15), and evidence cited in Plaintiff's opposition and supporting papers, including Plaintiff's Opposition to Defendant's Statement of Undisputed Facts (Doc. No. 24). The Court notes that Plaintiff attempts to dispute certain facts on grounds that do not actually raise a genuine issue or by raising additional facts. For example, Plaintiff disputes the validity of CBI's statement that "[o]n June 28, 2016, around 6:22 a.m., Plaintiff called [CBI] and informed it his absence for June 28, 2016 was 'personal.,'" by citing evidence from an e-mail written by Human Resources Representative Anaya and sent to Human Resources Manager Noriega stating "on 6/27/2016 Ryan Brown Called out FMLA . . . . " (Doc. No. 24 at 2.) Plaintiff's evidence regarding an absence on 6/27/2016 does not otherwise dispute CBI's factual assertion that Plaintiff called on 6/28/2018, and described his absence as "personal."

he was an "all purpose" employee in the bottling department where his duties included operating labelers, palletizers, and driving a forklift. (Doc. No. 19, Exhibit A to Declaration of Katherine S. Catlos ("Catlos Decl.""), Deposition of Ryan Brown ("Brown Depo."), 20:3-12, 22:7-9, 23:1-12, 25:4-5.)

In 2016, CBI had a policy in place, entitled "Attendance — Employees covered by a Collective Bargaining Agreement" which stated Constellation could terminate a covered employee if he or she incurred nine (9) instances of absenteeism. (SUF 1.) Consecutive days of absenteeism count as one occurrence, and disciplinary action may be taken after six (6) occurrences in a 12-month period. (Doc. No 19, Ex. B to Catlos Decl.) Plaintiff acknowledged receipt of CBI's policy and was aware of its contents. (Doc. 16, Joint Statement of Undisputed Facts No. 1.)

In 2015 and 2016, Plaintiff had a medical condition while working at CBI for which he received intermittent leave under the Family and Medical Leave Act ("FMLA"). (SUF 2.) Plaintiff knew that reporting potential absences to CBI under the FMLA required notification to both CBI's human resources department and by calling Liberty Mutual (CBI's leave service vendor) at a 1-800-number ("Liberty Hotline") to report the reasons for missing work, including any requests for FMLA leave. (SUF 3.)

On June 27, 2016, Plaintiff called CBI and informed it that his absence was for "FMLA Pending." (Doc. 19, Ex. D to Catlos Decl.)

On June 28, 2016, around 6:22 a.m., Plaintiff called CBI and informed it his absence for June 28, 2016 was "personal." (SUF 4.) On June 28, 2016, around 10:00 p.m., Plaintiff called CBI and informed it his absences for June 29, 2016 to July 4, 2016 were "personal." (SUF 5.)

On June 29, 2016, Plaintiff underwent surgery. (SUF 6.) At that time, Plaintiff did not tell anyone in CBI's management he took time off for surgery. (SUF 7.) On the same date, RoseMary Anaya, a human resources generalist at CBI, sent Plaintiff a letter advising him that he may be eligible for a leave of absence under the FMLA because he had been absent from work for three days. (SUF 8; Doc. 18, Declaration of RoseMary Anaya, ¶ 6d and Ex. E.) Plaintiff claims he did not receive the letter. (Doc. 25-28, Declaration of Ryan Brown, ¶ 3.)

From July 11, 2016 to July 18, 2016, Plaintiff had not notified Liberty Mutual he wanted FMLA leave for his absences nor had he provided a doctor's note to CBI excusing his absences. (SUF 9.) By the time Plaintiff returned to work around July 19, 2016, he still had not explained his absences and had incurred enough infractions of the attendance policy for termination. (SUF 4-5, 9-10.)

On July 27, 2016, Cesar Lopez, Bottling Manager at CBI's Mission Bell Winery, asked human resources to look into Plaintiff's infractions, noting he was "at 9 infractions which is Termination . . . ." (Doc. No. 25, Plaintiff's Summary of Evidence, Ex. H.)

On August 2, 2016, CBI began conducting an audit of Plaintiff's absences. (Doc. 14 at 9; SUF 10.) RoseMary Anaya prepared a spreadsheet for Plaintiff's attendance. According to that spreadsheet, Plaintiff "called out FMLA" on June 27, 2016, but it was not approved, and Plaintiff was "Under Doctor's care" from July 11, 2016 to July 18, 2016. (Doc. No. 25, Plaintiff's Summary of Evidence, Ex. J.) A notation on the spreadsheet stated, "No doctors note received; ee states unable to retrieve from doctor." (*Id.*)

On August 3, 2016, Liberty Mutual, in response to an inquiry from CBI, informed CBI that Plaintiff did not have FMLA approved leave for June 27, 2016 or for July 11, 2016 to July 18, 2016. (SUF 11.) As of this time (August 3, 2016), CBI had not received a doctor's note from Plaintiff excusing his absences from June 29, 2016 to July 4, 2016. (SUF 12.)

On August 3, 2016, Bottling Manager Lopez issued Plaintiff a Disciplinary Action Report ("DAR") for eleven attendance infractions, two of those infractions—one for June 27, 2016, and one for June 28, 2016 through July 1, 2016—were noted to be "FMLA pending." (Doc. No. 25, Plaintiff's Summary of Evidence, Ex. C.) Plaintiff signed the DAR on August 7, 2016. (*Id.*)

On August 25, 2016, Bottling Manager Lopez asked Ms. Anaya and Roman Noriega, Human Resources Manager, to look into Plaintiff's absence for August 25, 2016. Bottling Manager Lopez noted that if this was an additional infraction of the attendance policy, then Plaintiff would be at 10 infractions, and that Plaintiff had been warned two weeks prior about not missing any work. Bottling Manager Lopez asked for human resources to validate Plaintiff's call, and indicated that it looked like they "were looking to a potential termination." (Doc. No. 25,

Plaintiff's Summary of Evidence, Ex. K.)

On August 29, 2016, Ms. Anaya confirmed that Plaintiff was eligible for sick leave as of August 25, 2016. John Farley, a CBI Manager responded, "so he escapes … for now," and Ms. Anaya replied "for now…..but we got his number…..and it isn't his seniority one! He still needs to be spoken to in my opinion." (*Id.*)

By September 19, 2016, CBI had not received any documentation from Plaintiff excusing his absences for June 27, 2016 to July 1, 2016 and July 11, 2016 to July 18, 2016. (SUF 13-14.)

On September 20, 2016, CBI made the decision to terminate Plaintiff. (SUF 15.) On that date, Bottling Manager Lopez issued Plaintiff a DAR written warning, noting that Plaintiff was absent from work on September 19, 2016, and failed to comply with the attendance policy requiring employees to report their absences at least one-half hour prior to the start of their shift because Plaintiff called at 6:45 a.m. for a 7:00 a.m. shift. (Doc. No. 25, Plaintiff's Summary of Evidence, Ex. D.) Manager Lopez also issued a DAR to Plaintiff for 10.5 attendance infractions. Plaintiff was suspended pending an investigation. (Doc. No. 25, Plaintiff's Summary of Evidence, Ex. E.)

On September 22, 2016, CBI terminated Plaintiff for missing too many days of work. (SUF 16.) During the termination meeting, Plaintiff claimed that he had a doctor's note excusing his absences. (Doc. No. 20, Declaration of Roman Noriega ("Noriega Decl."), ¶ 9a.) On September 22, 2016, after deciding to terminate Plaintiff, CBI received a faxed doctor's note. The note came from the office of Dr. Allan Nassar, had the date September 21, 2016, and stated only that Plaintiff could not work from June 27, 2016 to July 19, 2016. (SUF 17.)

Two months after terminating Plaintiff, CBI held a grievance meeting with Plaintiff and his union representatives. (SUF 18.) During the meeting, CBI was in possession of two notes from the same doctor which had different dates and contained inconsistencies as to when Plaintiff could return to work.[2] (Doc. No. 20, Noriega Decl., ¶ 11a-11d.) When asked why he had not

---

[2]     Plaintiff reportedly provided CBI two notes from Dr. Nassar regarding his leave from June 27, 2016, to July 19, 2016. The first note is dated 6/28/16, and stated "no work - 6/27 – [ ] 7/1/16 May return to full duty as of 7/5/16." (Doc. No. 20, Ex. H to Noriega Decl.) The second note is dated 9/21/16, and stated "no work 6/27/16-7/19/16." (Doc. No. 20, Ex. F to Noriega Decl.) CBI also received a note from Dr. Muhammad Anwar dated 7/15/16, which stated that Plaintiff was under his care from "6/29/16" and was being released to return to work as

applied for FMLA leave, Plaintiff said he did not know. (Doc. No. 20, Noriega Decl., ¶ 11g.) With no rational explanation for his absences, CBI upheld Plaintiff's termination. (Doc. No. 20, Noriega Decl., ¶ 11h.) On March 20, 2017, Plaintiff's union confirmed CBI's decision to terminate, finding CBI had "just cause" to terminate Plaintiff. (SUF 18.)

## III.   Legal Standard

Summary judgment is appropriate when the pleadings, disclosure materials, discovery, and any affidavits provided establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that may affect the outcome of the case under the applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute is genuine "if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The exact nature of this responsibility, however, varies depending on whether the issue on which summary judgment is sought is one in which the movant or the nonmoving party carries the ultimate burden of proof. *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). If the movant will have the burden of proof at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Id.* (citing *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548). In contrast, if the nonmoving party will have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id.*

If the movant satisfies its initial burden, the nonmoving party must go beyond the

---

of "7/19/16" with "no restrictions, full duty." (Doc. No. 20, Ex. H to Noriega Decl.) None of the notes identified Plaintiff's illness, condition or purported disability.

allegations in its pleadings to "show a genuine issue of material fact by presenting affirmative evidence from which a jury could find in [its] favor." *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) (emphasis in original). "[B]ald assertions or a mere scintilla of evidence" will not suffice in this regard. *Id.* at 929; *see also Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ("When the moving party has carried its burden under Rule 56[ ], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." *Soremekun*, 509 F.3d at 984. Instead, "[t]he evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. Inferences, however, are not drawn out of the air; the nonmoving party must produce a factual predicate from which the inference may reasonably be drawn. *See Richards v. Nielsen Freight Lines*, 602 F.Supp. 1224, 1244–45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

## III.  Discussion

CBI seeks summary judgment on Plaintiff's causes of action.

### A.  First Cause of Action:  Disability/perceived disability discrimination in violation of California Government Code § 12940

Plaintiff's first cause of action is brought under California's Fair Employment and Housing Act ("FEHA"), section 12940(a), which provides that it is an unlawful employment practice "[f]or an employer, because of the...physical disability, mental disability, [or] medical condition...of any person ...to bar or discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment." Cal. Gov't Code § 12940.  A prima facie disability discrimination case under FEHA requires that the employee show that he (1) suffered

from a disability, or was regarded as suffering from a disability; (2) could perform the essential duties of the job with or without reasonable accommodations; and (3) was subjected to an adverse employment action because of the disability or perceived disability. *Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 797 (N.D. Cal. 2015).

Claims for disability discrimination under FEHA are subject to the *McDonnell Douglas* three-part test.[3] *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). "Under the three-part *McDonnell Douglas* test, the plaintiff bears the initial burden of establishing a prima facie case of employment discrimination;" then, once the plaintiff has done so, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions." *Earl*, 658 F.3d at 1112 (citing *McDonnell Douglas*, 411 U.S. at 802–804). In the third part, if the employer "articulates a legitimate reason, the plaintiff must raise a triable issue that the employer's proffered reason is pretext for unlawful discrimination," but the "ultimate burden of persuasion remains with the plaintiff." *Id.*

Where, like here, an employer moves for summary judgment, "the burden is reversed ... because the defendant who seeks summary judgment bears the initial burden." *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1242–43 (9th Cir. 2013) (quoting *Dep't of Fair Employment & Hous. v. Lucent Technologies, Inc.*, 642 F.3d 728, 745 (9th Cir. 2011) (quotation omitted). Thus, "[t]o prevail on summary judgment, [the employer is] required to show either that (1) plaintiff could not establish one of the elements of [the] FEHA claim or (2) there was a legitimate, nondiscriminatory reason for its decision to terminate plaintiff's employment." *Lucent Technologies, Inc.*, 642 F.3d at 745 (quotation omitted) (alterations in original). An employer "need not persuade the court that it was actually motivated by the proffered [legitimate] reason[ ]." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (quoting *Tex. Dep't of Cmmty. Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)); *see also Muzquiz v. City of Emeryville*, 79 Cal.App.4th 1106, 1117, 94 Cal.Rptr.2d

---

[3] State and federal employment discrimination laws are similar, and California courts look to federal precedent when interpreting FEHA. *Guz v. Bechtel Nat'l, Inc.*, 24 Cal.4th 317, 354, 100 Cal.Rptr.2d 352, 8 P.3d 1089 (2000).

579 (2000). Rather, it need only articulate via "admissible evidence, the reasons for the plaintiff's" termination." *Burdine*, 450 U.S. at 255; *see also Bd. of Trs. of Keene State Coll. v. Sweeney*, 439 U.S. 24, n. 2, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978) (stating "employer's burden is satisfied if [it] simply 'explains what [it] has done'"). If the employer is successful, the burden shifts back to the employee who must demonstrate either "that the defendant's showing was in fact insufficient or . . . that there was a triable issue of fact material to the defendant's showing." *Lucent*, 642 F.3d. at 746 (quotation omitted) (omission in original).

### 1. CBI has demonstrated a legitimate, nondiscriminatory reason for Plaintiff's termination.

Here, CBI has proffered admissible evidence that it terminated Plaintiff's employment because he failed to comply with CBI's attendance policy. *See, e.g., Hooker v. Parker Hannifin Corp.*, 548 Fed.App'x 368, 370 (9th Cir. 2013) (affirming that "attendance infractions" constitute non-retaliatory, non-discriminatory reasons for terminating employment under FEHA); *see also Trujillo v. U.S. Postal Serv.*, 330 Fed.App'x 137, 140 (9th Cir. 2009) (recognizing documented excessive absences as legitimate nondiscriminatory reason for termination); *Lavin v. United Techs. Corp.*, No. 2:13-CV-09384-CAS, 2015 WL 847392, at *15 (C.D. Cal. Feb. 23, 2015) (finding defendants had met burden of proffering a legitimate reason for plaintiff's termination where defendants submitted admissible evidence that they terminated plaintiff's employment because he failed to comply with company's attendance requirements). The record demonstrates that Plaintiff incurred numerous attendance infractions, and the absences at issue, June 27, 2016 to July 1, 2016 and July 11, 2016 to July 18, 2016, were unexcused. Indeed, the record demonstrates that as of the time CBI decided to terminate Plaintiff on September 20, 2016, Plaintiff had not provided any medical documentation excusing these absences.[4] It also is undisputed that Plaintiff designated his leave as "personal" on June 28, 2016, and from June 29,

---

[4] At oral argument, Plaintiff asserted that he provided a doctor's note upon his return to work on July 19, 2016. However, Plaintiff's own testimony does not support the assertion that he provided a note on July 19, 2016, only that he provided a note for the three weeks that he was off for surgery. (Doc. 25-2, Ex. A to Plaintiff's Supporting Evidence, Brown Depo. 118:8-13.] This testimony is consistent only with the note dated September 21, 2016, and received by CBI on September 22, 2016, indicating "no work 6/27/16-7/19/16." (Doc. No. 25-21, Ex. T to Plaintiff's Supporting Evidence).

2016 to July 1, 2016, and he did not request FMLA/CFRA leave through Liberty Mutual for any of the dates (June 27, 2016 to July 1, 2016 and July 11, 2016 to July 18, 2016) despite his awareness of the relevant procedures.[5] Plaintiff does not dispute that he had other infractions leading up to his termination for absenteeism, nor does he dispute that too many unexcused absences would result termination. The Court thus concludes that CBI met its burden of proffering a legitimate, nondiscriminatory reason for Plaintiff's termination, and the burden now shifts to Plaintiff to demonstrate pretext.

### 2. Plaintiff has not introduced sufficient evidence to raise a disputed issue of fact as to whether CBI's reason for termination was pretextual.

At the summary judgment stage, Plaintiff must introduce evidence sufficient to raise a genuine issue of material fact as to whether the CBI's reason was pretextual. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1282 (9th Cir. 2000) (finding that in response to employer's offer of nondiscriminatory reasons, employee must produce specific, substantial evidence of pretext). Speculation about an employer's motives is not substantial responsive evidence. *Cucuzza v. City of Santa Clara*, 104 Cal.App.4th 1031, 1038, 128 Cal.Rptr.2d 660 (2002); *see also Flores v. Merced Irr. Dist.*, 758 F.Supp.2d 986, 999 (E.D.Cal.2010). An employee cannot simply show that the employer's decision was "wrong, mistaken, or unwise." *Villanueva v. City of Colton*, 160 Cal.App.4th 1188, 1195, 73 Cal.Rptr.3d 343 (2008) (quoting *Morgan v. Regents of the Univ. of Cal.*, 88 Cal.App.4th 52, 75, 105 Cal.Rptr.2d 652 (2000)). "Rather, the employee must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for the [asserted] non-discriminatory reasons." *Id.*

///

///

///

---

[5]    The parties' briefing alternately refers to FMLA leave and/or CFRA leave.

### a. Plaintiff raises a FMLA/CFRA interference claim in opposition to the motion for summary judgment.

Plaintiff does not directly address CBI's argument that it is entitled to summary judgment because it had a legitimate, nondiscriminatory reason for terminating Plaintiff's employment, nor does Plaintiff directly argue pretext. Instead, Plaintiff appears to advance a claim for interference with his FMLA/CFRA rights (and failure to investigate his request for FMLA/CRFA leave), which is not a claim in the operative complaint.[6] (Doc. No. 23 at pp. 17-22). Plaintiff likely has waived any such claim for interference with his FMLA/CFRA rights (and failure to investigate his request for leave) by asserting it for the first time in opposition to the motion for summary judgment. Even if not waived or otherwise improperly before the Court, Plaintiff's interference claim fails on the merits, and CBI is entitled to summary judgment.

In the Ninth Circuit, the same standards apply to claims under CFRA as under FMLA. *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1133 (9th Cir. 2003) (instructing courts to interpret CFRA in the same way as the FMLA). Thus, to establish a claim for CFRA/FMLA interference, a plaintiff must demonstrate that (1) he was eligible for the CFRA/FMLA's protections, (2) his employer was covered by the CFRA/FMLA, (3) he was entitled to leave under the CFRA/FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied him CFRA/FMLA benefits to which he was entitled. *Escriba v. Foster Poultry Farms,* 743 F.3d 1236, 1243 (9th Cir. 2014) (quoting *Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011)) (internal quotation marks omitted); Cal. Code Regs. tit. 2, § 11088(b)(1) (identifying burden of proof to include following elements: the employer was a covered employer, the employee making the request was an eligible employee, the request was for a CFRA-qualifying purpose, the request was reasonable, and the employer denied the request for CFRA leave.); *Moore v. Regents of the Univ. of California*, 248 Cal.App.4th 216, 250, 206 Cal.Rptr.3d 841, 869 (2016) (CFRA

---

[6] "Violations of ... CFRA generally fall into two types of claims: (1) 'interference' claims in which an employee alleges that an employer denied or interfered with her substantive rights to protected medical leave, and (2) 'retaliation' claims in which an employee alleges that she suffered an adverse employment action for exercising her right to CFRA leave." *Bareno v. San Diego Cmty. Coll. Dist.*, 7 Cal. App. 5th 546, 558–59, 212 Cal. Rptr. 3d 682, 690 (2017). Plaintiff's operative complaint includes a claim for retaliation in violation of CFRA, which is discussed separately in this order.

interference claim includes two elements: (1) the employee's entitlement to CFRA leave rights; and (2) the employer's interference with or denial of those rights.)  A CFRA/FMLA interference claim is not subject to the *McDonnell Douglas* burden-shifting analysis.  *Sanders*, 657 F.3d at 778 ("In this circuit, we have declined to apply the type of burden shifting framework recognized in *McDonnell Douglas* to FMLA 'interference' claims."); *Moore*, 248 Cal.App.4th at 250 (CFRA).

For a CFRA (or FMLA) claim to survive summary judgment, a reasonable trier of fact must be able to find that notice of the qualifying leave was given.  *See Avila Cont'l Airlines, Inc.*, 165 Cal.App.4th 1237, 1255, 82 Cal.Rport.3d 440 (2008).  An employee need not expressly assert his rights under CFRA/FMLA, or even mention CFRA/FMLA, but must provide "at least verbal notice sufficient to make the employer aware" that the employee needs CFRA/FMLA-qualifying leave, and the anticipated timing and duration of the leave.  Cal. Code Regs. tit. 2, § 11091(a)(1) ("an employee shall provide at least verbal notice sufficient to make the employer aware that the employee needs CFRA leave, and the anticipated timing and duration of the leave. The employee need not expressly assert rights under CFRA or FMLA, or even mention CFRA or FMLA, to meet the notice requirement; however, the employee must state the reason the leave is needed, such as, for example, the expected birth of a child or for medical treatment"); 29 C.F.R. § 825.303(b) (Under FMLA, an employee shall provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request.").  Once the employee has provided sufficient notice, "[t]he employer should inquire further of the employee if it is necessary to have more information about whether CFRA/FMLA leave is being sought by the employee and obtain the necessary details of the leave to be taken." Cal. Code Regs. tit. 2, § 11091(a)(1).

In this case, Plaintiff first asserts that there is a triable issue of fact as to whether CBI had knowledge of his need for FMLA/CFRA leave because "CBI's own documents show that its managers knew he called in on June 27, 2016, requesting FMLA, that he informed CBI of extended absence, that he was under a doctor's care, CBI coded his absence 'FMLA pending,' [Plaintiff] provided three doctor's notes, and told the HR Manager he asked for FMLA and that

HR never sent him any paperwork."  (Doc. 23 at p. 22.)  Plaintiff also cites *Soria v. Univision Radio Los Angeles, Inc.*, 5 Cal.App.5th 570 (2016), to contend that summary judgment is not appropriate where triable issues of fact exist as to whether an employee's statements concerning time off for surgery were sufficient to trigger the employer's obligation to inquire further into the details of the request.  In *Soria*, there was a disputed issue of fact as to whether the employee had informed her employer that she had a tumor and needed surgery.  *Id.* at 592-93 (All that is required is that the plaintiff show that the "employees who decided to discharge [her] knew of [her] disability.")

Here, unlike in *Soria*, Plaintiff had surgery on June 29, 2016, to remove a gluteal abscess, but he did not inform CBI or Liberty Mutual of the surgery, nor did he notify CBI or Liberty Mutual that he required medical leave of any type for the abscess.  Instead, the undisputed evidence demonstrates that Plaintiff informed CBI on the morning of June 28, 2016, that he would not be at work for "personal" reasons.  Later that same evening, Plaintiff informed CBI that he would not be at work from June 29, 2016 to July 4, 2016, also for "personal" reasons.  A reasonable trier of fact could not conclude that Plaintiff's verbal request for "personal" leave for June 28, 2016, and June 29, 2016 through July 4, 2016, without more, was sufficient to put CBI on notice that he required or sought FMLA/CFRA leave.  Plaintiff presents no evidence that he ever informed Liberty Mutual (or CBI) that he had a new condition unrelated to his stomach ailments for which he could already take intermittent leave or that CBI knew that Plaintiff sought FMLA/CFRA leave for any other condition.  Indeed, Plaintiff testified at his deposition that he did not specifically tell CBI that he had emergency surgery to remove an abscess.[7] (SUF No. 7)

---

[7]       In relevant part, Plaintiff testified:

Q. So the – did you tell anyone in management that you were taking time off – or that you had taken time off. Excuse me.  That you had taken time off to have a cyst removed?
A. I do not believe so.
Q. And why didn't you share with anyone at management at Constellation that you had taken time off for removal of a cyst?
A. I didn't feel they needed to know where it was because I didn't want it --- everybody to know where it was at.
Q. And it was – where was it at?
A. On my butt.
A. So I didn't want that spread around the winery.
Q. Right. Right. Of course.  And the time off after the surgery, that time off was for you to heal after the surgery, right?

Plaintiff next suggests that his request on June 27, 2016, which was designated as "FMLA pending" in CBI's records, was sufficient notice of his need for CFRA/FMLA leave for his subsequent abscess-related absences beginning on June 28, 2016. Contrary to Plaintiff's suggestion, a reasonable trier of fact could not infer that Plaintiff's isolated request for FMLA on June 27, 2016, was in any way linked to his absences from June 28, 2016 through July 4, 2016, for which he himself designated as "personal." In the absence of information regarding the underlying reason for the request, e.g., surgery or medical treatment, the purported "notice" is legally insufficient to put the employer on notice. *See* Cal. Code Regs. tit. 2, § 11091(a)(1)) ("The mere mention of 'vacation,' other paid time off, or resignation does not render the notice insufficient, provided the underlying reason for the request is CFRA-qualifying, and the employee communicates that reason to the employer.") Plaintiff also did not request FMLA leave through Liberty Mutual for the absence on June 27, 2016, nor did he suggest that is was for any "new" condition unrelated to his already-approved intermittent leave for stomach issues.

The undisputed evidence also indicates that for absences from July 11, 2016, to July 18,

---

A. Yes, ma'am.

(Doc. No 19, Ex. A to Catlos Decl., Brown Depo., 203:13-204:6.) Plaintiff's subsequent assertion in his declaration submitted in support of his opposition to the motion for summary judgment is not sufficient to raise a genuine dispute of material fact. (Doc. No. 25-28, Declaration of Ryan Brown, ¶3.) A party cannot create an issue of fact by a declaration contradicting his or her own deposition or other sworn testimony. *Block v. City of Los Angeles*, 253 F.3d 410, 419 n. 2 (9th Cir. 2001) ("A party cannot create a genuine issue of material fact to survive summary judgment by contradicting his earlier version of the facts.").

Plaintiff also contends that he called Ms. Anaya shortly after the surgery and told her about the surgery and asked for the FMLA paperwork. (Doc. No. 24, Plaintiff's Opposition to Statement of Undisputed Facts, ¶7.) However, the cited testimony suggests only that Plaintiff contacted Ms. Anaya for FMLA leave, not that he notified her of his particular condition or that it was unrelated to his stomach issues. In relevant part, the testimony reads as follows:

Q. Did you apply for FMLA leave relating to the cyst?
A. I called and asked Rosemary to get me the FMLA leave.
Q. For?
A. My surgery.
Q. And Rosemary Anaya is the person you're
referencing, right?
A. Yes, ma'am. I'm sorry. Yes.
Q. And what's her job title?
A. She was part of the HR.
Q. And when did you call Rosemary asking her to give you FMLA paperwork for the cyst surgery?
A. Within a couple of days after the surgery and I found out I was going to be off for an extended amount of time.

(Doc. 25-2, Exhibit A to Plaintiff's Summary of Evidence, Brown Depo. 104:15-105:5.)

2016, Plaintiff informed CBI that he was under a doctor's care, but when he returned to work on July 19, 2016, he did not produce a doctor's note excusing his absences, nor did he produce any doctor's note until after his termination.[8]  Even then, the notes he submitted provided no information beyond that already known by CBI, i.e., that Plaintiff was under a doctor's care for specific dates, and not one of the notes identified any new condition for which Plaintiff reportedly wanted FMLA/CFRA leave.  Further, nothing in those notes or other communications to CBI suggested that Plaintiff's leave from July 11, 2016, through July 18, 2016, was unrelated to his stomach issues for which he already could take intermittent FMLA leave by following CBI's procedures.  Plaintiff did not notify Liberty Mutual of his desire for FMLA/CFRA leave for these dates.  On these facts, no reasonable jury could find that Plaintiff provided sufficient notice of his need for leave under the FMLA/CFRA to shift the burden to CBI to seek further information.

Even if the notice were sufficient, the undisputed evidence also reflects that CBI sent Plaintiff a FMLA/state-leave rights letter on June 29, 2016, which indicated that CBI's employees must submit a request for medical leave using Liberty Mutual.  (Doc. No. 18, Anaya Decl. at Ex. E.)  Plaintiff attempts to avoid summary judgment by asserting that CBI failed to send him any notice of his FMLA/CFRA rights, and that he did not receive the letter from Ms. Anaya.  Plaintiff has not submitted any evidence to dispute that Ms. Anaya drafted and mailed a FMLA/state leave rights letter to Plaintiff on June 29, 2016.  Rather, Plaintiff cites testimony that Ms. Anaya did not have a specific recollection of placing this particular letter in the mail.  (Doc. 25-26, Ex. Y to Plaintiff's Supporting Evidence, Anaya Decl. 12:21-22:2.)[9]  Simply because Ms. Anaya may not

---

[8]    As previously noted, Plaintiff has not cited any evidence to suggest that he provided a note to CBI upon his return to work on July 19, 2016.

[9]    In relevant part, Ms. Anaya testified regarding the June 28, 2018 letter as follows:

Q. Do you recognize it?
A. That is my signature.  I recognize the document.  It's a formatted letter.
Q. Do you know whether or not you placed that in the U.S. Mail?
A. **I would have had to, because before I place anything in the mail, I always stamp "Copied."**
Q. Well, you said you also put the document in the personnel file, correct?
A. Right.
Q. I can tell you Roman Noreiga said he found this letter somewhere else, not in Ryan's personnel file.
…
Q. So the question is do you have a specific recollection of placing this letter in the mail, right?  You've told me how you always do things and you think you did, because you put a stamp on it, but I'm asking do you specifically remember putting this letter in the mail"

1  have recalled sending that specific letter or that Plaintiff may not have seen the letter are separate

2  issues, and do not raise a genuine dispute of fact.

3          Moreover, a dispute of fact regarding the sending and receipt of the FMLA/state-leave

4  rights letter does not warrant denial of the motion for summary judgment. Assuming for the sake

5  of argument that CBI failed to send Plaintiff notice of his FMLA/CFRA rights around the time of

6  his abscess surgery, Plaintiff admitted that he already knew how to take FMLA leave (and

7  successfully had done so numerous times in the past) under CBI's policies and procedures.

8  Plaintiff offers nothing in his declaration or supporting evidence to counter that he knew of his

9  FMLA/CFRA rights and that he could have exercised his right to request FMLA/CFRA leave for

10  the absences at issue here. Thus, this is not a situation in which Plaintiff was unaware that he

11  could avail himself of the protections under FMLA/CFRA. *Cf. Faust v. California Portland*

12  *Cement Co.*, 150 Cal.App.4th 864 (2007) (employer did not give notice to the employee of his

13  rights under CFRA and employee did not know he could avail himself of those protections).

14          Plaintiff also presents no admissible evidence to suggest that he utilized CBI's procedures

15  relative to the absences for June 27, 2016, June 28, 2016, June 29, 2016 through July 4, 2016, or

16  for July 11, 2016 to July 18, 2016. Indeed, nothing in Plaintiff's opposition explains why Plaintiff

17  did not request FMLA/CFRA leave for his gluteal abscess despite his knowledge of CBI's

18  procedure for doing so. CBI could not assume that Plaintiff desired to use FMLA/CFRA leave

19  for the abscess surgery. *See, e.g., Escriba*, 743 F.3d at 1244 (finding that simply referencing an

20  FMLA-qualifying reason does not trigger FMLA protections, and stating that an employee can

21  affirmatively decline to use FMLA leave, even if the underlying reason for seeking the leave

22  would have invoked FMLA protection). Thus, to the extent Plaintiff bases his interference claim

23  on CBI's purported failure to notify or to designate his leave as protected by CFRA/FMLA, his

24  interference claim fails. Plaintiff had notice of his rights regarding FMLA/CFRA, but did not

25  exercise those rights by applying to Liberty Mutual. *See Escriba*, 743 F.3d at 1243–45 (rejecting

26  the plaintiff's argument that the employer was required to designate her leave as FMLA-protected

27  A. I do not recall.

28  (Doc. 25-26, Ex. Y to Plaintiff's Supporting Evidence, Anaya Decl. 12:21-22:2) (emphasis added).

17

where the plaintiff was given proper notice of her right to FMLA leave and "unequivocally refused to exercise that right"). Plaintiff's failure to inform Liberty Mutual regarding his abscess and surgery (and the absences at issue here) is fatal to his interference claim. *See Kennedy v. Bank of Am.,* No. C 10-0868 CW, 2011 WL 1522380, *7 (N.D. Cal. Apr. 21, 2011) (granting summary judgment to employer where employee failed to follow procedures prescribed in employee handbook for taking FMLA leave).

> **b. Plaintiff presents no evidence to raise a genuine dispute of fact that CBI knew or perceived that Plaintiff suffered from a disability for the unexcused absences**

Regardless of whether Plaintiff could make out an interference claim, which is not pled or at issue, there is no evidence that the CBI discharged Plaintiff because he had a disability. To show that CBI acted with discriminatory intent, Plaintiff is required to produce evidence that the CBI employees who decided to discharge him knew of his disability. *Brundage v. Haun*, 57 Cal. App. 4th 228, 236-37 (1997). An employee's "vague or conclusory statements revealing an unspecified incapacity are not sufficient to put an employer on notice of its obligations under the [FEHA]." *Id.* at 237 (discussing disability discrimination under Americans with Disabilities Act ("ADA") and noting that because the FEHA provisions relating to disability discrimination are based on the ADA and other federal law, decisions interpreting federal antidiscrimination laws are relevant in interpreting FEHA's provisions). Plaintiff therefore is required to produce evidence that CBI knew of his disability or perceived him with a disability in order to demonstrate that CBI acted with discriminatory intent.

The reasoning in *Avila v. Continental Airlines, Inc*. 165 Cal.App.4th 1237, 1249 (2008), as modified on denial of reh'g (Aug. 28, 2008), is instructive on this point. The plaintiff in *Avila* was fired for violating his employer's attendance policy. *Id.* at 1245. Prior to termination, the plaintiff had been hospitalized for pancreatitis and missed four days of work. *Id.* at 1244. He submitted two medical forms to his employer documenting his absences. The first form stated that the plaintiff had visited a medical center and was unable to work for one day, and the second form stated that the plaintiff had been admitted to the hospital for a few days and would be unable to work for five days. The forms did not include any information about the reason for the

plaintiff's hospitalization and did not indicate there would be any restriction on the plaintiff's ability to work after the five-day period. *Id.* at 1249. Only after his termination did the plaintiff tell his employer the hospitalization was related to pancreatitis. *Id.* at 1244. Granting summary judgment on the plaintiff's FEHA disability discrimination claim, the court reasoned that the medical forms submitted by the plaintiff were insufficient to put the employer on notice that the plaintiff suffered from a disability. *Id.* at 1249.

Here, as explained above, Plaintiff failed to demonstrate that he gave notice of an alleged disability or that CBI had reasons to believe Plaintiff had a new disability at the time of termination. Indeed, Plaintiff might have had surgery or been under a doctor's care for reasons other than a disability, such as for elective surgery or other preventative treatment for some other condition that was not disabling. Any evidence that CBI learned of a purported disability after deciding to terminate him is not probative and is irrelevant to determining whether CBI acted from discriminatory animus. *Id.* at 1251 ("Evidence that a decision maker learned of a plaintiff's disability after deciding to take adverse employment action is not probative of whether the decision maker was aware of the plaintiff's disability when he or she made the decision.)

### c.    Plaintiff has failed to demonstrate pretext.

Plaintiff indirectly suggests that the reason for his firing was pretextual because CBI disciplined him for taking FMLA in December 2012, and weeks before his actual termination, managers tried to terminate him and joked about terminating him in the future. As to the alleged incident in December 2012, there is no indication that any of the employees involved in that incident were also involved in Plaintiff's termination nearly four years later. (Doc. No. 25, Plaintiff's Supporting Evidence, Ex. X.) More importantly, other than the absences at issue in this litigation, Plaintiff testified at his deposition that CBI granted all of his other requests for accommodations. (Doc. No. 19, Ex. A to Catlos Decl., Brown Depo.: 185:2-7; 99:19-101:9.)

As to the attempt to terminate Plaintiff and the joking e-mails exchanged prior to Plaintiff's termination, this evidence is not sufficient to support an inference or finding of pretext. The evidence, referenced above, demonstrates that on August 25, 2016, Bottling Manager Noriega sent an e-mail to Ms. Anaya and Mr. Noriega questioning the validity of Plaintiff's

absence on that date.  Bottling Manager Lopez noted that if this was an additional infraction of the attendance policy, then Plaintiff would be at 10 infractions, and that Plaintiff had been warned two weeks prior about not missing any work.  Mr. Lopez asked for human resources to validate Plaintiff's call, and indicated that it looked like they "were looking to a potential termination." (Doc. No. 25, Plaintiff's Summary of Evidence, Ex. K.)  On August 29, 2016, Ms. Anaya confirmed that Plaintiff was eligible for sick leave as of August 25, 2016.  Manager Farley responded, "so he escapes … for now," and Ms. Anaya replied "for now…..but we got his number…..and it isn't his seniority one!  He still needs to be spoken to in my opinion."  (*Id.*)

At a minimum, this evidence demonstrates that at the time of the e-mail exchange, Plaintiff was not disciplined or denied eligible sick leave, nor is there any indication that the absence at issue had any relationship to the decision to terminate Plaintiff in September 2016.  The evidence also demonstrates that Plaintiff apparently had at least nine other potential infractions of the attendance policy.  Even if two of those infractions were the absences at issue here, Plaintiff has not submitted any evidence demonstrating that he did not have at least seven other, independent infractions of the attendance policy, which would warrant disciplinary action under CBI's attendance policies and procedures.  Moreover, a single remark regarding Plaintiff's attendance patterns unrelated to any disability or perceived disability is not sufficient evidence to raise a genuine dispute regarding pretext.  *See, e.g., Merrick v. Farmers Ins. Group*, 892 F.2d 1434, 1438 (9th Cir. 1990) (concluding that single "stray" remark is insufficient to establish discrimination; noting single remark that selected employee was "a bright, intelligent, knowledgeable young man" insufficient to create triable issue on pretext in age discrimination claim); *Holtzclaw v. Certainteed Corp.*, 795 F. Supp.2d 996, 1014 (E.D. Cal. 2011) (noting that isolated and stray remarks are insufficient to establish discrimination without other indicia of discriminatory intent; court determined that three comments to employee were insufficient to demonstrate that the employer relied on illegitimate criteria).  The Court therefore finds that Plaintiff has not provided "substantial evidence" that CBI's stated reason for termination was pretextual.  *Hersant v. Dep't of Soc. Servs.*, 57 Cal.App.4th 997, 1004-1005 (1997) (holding that "to avoid summary judgment, an employee claiming discrimination must offer substantial evidence that the employer's stated

nondiscriminatory reason for the adverse action was untrue or pretextual, or evidence the employer acted with a discriminatory animus, or a combination of the two, such that a reasonable trier of fact could conclude the employer engaged in intentional discrimination.). Accordingly, CBI is entitled to summary judgment on Plaintiff's first cause of action for disability discrimination. The remainder of Plaintiff's complaint is based upon alleged disability discrimination, and because CBI is entitled to summary judgment on that claim, the Court finds that CBI is entitled to summary judgment on the remainder of his claims. Nevertheless, the Court briefly will assess the merits of those claims.

**B.      Second Cause of Action:  Failure to Accommodate Disability in Violation of Government Code § 12940(m)(1)**

"The essential elements of a failure to accommodate claim are: (1) the plaintiff has a disability covered by the FEHA; (2) the plaintiff is a qualified individual (i.e., he or she can perform the essential functions of the position); and (3) the employer failed to reasonably accommodate the plaintiff's disability. *Cuiellette v. City of Los Angeles*, 194 Cal. App. 4th 757, 766, 123 Cal. Rptr. 3d 562, 569 (2011).

Under section 12940, subdivision (m), an employer must provide a "reasonable accommodation for the *known* physical or mental disability of an applicant or employee." *Featherstone v. S. California Permanente Med. Grp*., 10 Cal.App.5th 1150, 1166, 217 Cal. Rptr. 3d 258, 272 (2017) (citation omitted; emphasis added). An employer's duty to reasonably accommodate an employee's disability is not triggered until the employer knows of the disability. *Id.*

Here, there is no factual evidence that Plaintiff requested an accommodation of any disability that was denied by CBI prior to his termination in September 2016. Plaintiff admitted that other than the absences at issue, CBI accommodated his request for intermittent leave for his stomach issues. Further, the factual evidence demonstrates that Plaintiff did not request any accommodations for his abscess-related absences in June and July 2016, identifying them as "personal" or failing to submit any doctor's note until after his termination in September 2016.

Additionally, Plaintiff's doctor's notes indicated that when he returned to work in July 2016 after his abscess surgery, he was cleared to work with no restrictions. As Plaintiff did not request any accommodations for his abscess surgery, communicate any limitations, or even appear to have any limitations after he returned from surgery, CBI had no duty under FEHA to provide him an accommodation. *See King v. United Parcel Serv., Inc.*, 152 Cal. App. 4th 426, 443, 60 Cal.Rptr.3d 359 (2007) (holding employer had no duty to accommodate employee who returned to work with a doctor's note releasing him back to "regular duties and hours" and who admitted he was able to "get the job done"). Accordingly, the Court finds that CBI is entitled to summary judgment on this claim.

### C. Third Cause of Action: Retaliation for requesting accommodation in violation of Government Code § 12940(m)(2)

"[I]n order to establish a prima facie case of retaliation under FEHA, a plaintiff must show (1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." *Light v. Dep't of Parks & Recreation*, 14 Cal. App. 5th 75, 91, 221 Cal. Rptr. 3d 668, 681–82 (2017). The requisite "causal link" may be shown by the temporal relationship between the protected activity and the adverse employment action. *Id.*

"Once an employee establishes a prima facie case, the employer is required to offer a legitimate, nonretaliatory reason for the adverse employment action. [ ] If the employer produces a legitimate reason for the adverse employment action, the presumption of retaliation 'drops out of the picture,' and the burden shifts back to the employee to prove intentional retaliation." *Id.*

Here, CBI produced a legitimate reason for terminating Plaintiff, i.e., his violation of CBI's attendance policy. Plaintiff has not met his burden to establish intentional retaliation for engaging in protected activity. Plaintiff does not dispute that he had numerous unexcused absences under the attendance policies. As for the absences in question here, Plaintiff knew the procedures for requesting FMLA leave, and, without explanation, failed to avail himself of those procedures. Accordingly, CBI is entitled to summary judgment on this claim.

**D. Fourth Cause of Action: Failure to engage in a timely, good faith, interactive process to determine effective reasonable accommodation in violation of Government Code § 12940(n)**

Under section 12940, subdivision (n), it is actionable for an employer to fail "to engage in a timely, good faith, interactive process with the employee ... to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee ... with a known physical or mental disability or known medical condition." Cal. Gov't Code § 12940(n). "'Where the disability, resulting limitations, and necessary reasonable accommodations, are not open, obvious, and apparent to the employer, ... the initial burden rests primarily upon the employee ... to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations.'" *Featherstone*, 10 Cal.App.5th at 1169.

As discussed, Plaintiff did not identify any purported disability arising from his abscess, classifying his absences and leave as personal. Even after returning to work, Plaintiff did not notify CBI of the reason for his absence and did not provide a doctor's note until after his termination. As CBI was not otherwise aware that Plaintiff was allegedly disabled due to the abscess, it was not obligated to engage in the interactive process. Accordingly, CBI is entitled to summary judgment on this claim.

**E. Fifth Cause of Action: Failure to prevent discrimination in violation of Government Code § 12940**

Given the Court's determination that CBI is entitled to summary judgment on Plaintiff's discrimination claim, Plaintiff's claim for failure to prevent discrimination fails as a matter of law. *Featherstone*, 10 Cal.App.5th at 1166 ("Where, as here, a plaintiff cannot establish a claim for discrimination, the employer as a matter of law cannot be held responsible for failing to prevent same. . . .").

**F. Sixth Cause of Action: Retaliation for Exercising Rights Under CFRA in Violation of California Administrative Code**

Plaintiff's CFRA retaliation claim is subject to the same burden-shifting framework as his FEHA discrimination claims discussed above, and likewise fails because he cannot show that

CBI's reason for terminating him was pretextual. *See Bareno v. San Diego Cmty. Coll. Dist.*, 7 Cal.App.5th 546, 212 Cal.Rptr.3d 682, 692 (2017); *see also Chavez v. JPMorgan Chase & Co.*, 731 Fed.App'x 592, 595 (9th Cir. 2018).

### G.      Seventh Cause of Action:  Wrongful Termination in Violation of Public Policy

Based on the Court's determination that CBI is entitled to summary judgment on Plaintiff's FEHA and retaliation claims, Plaintiff's claim for wrongful termination in violation of public policy fails. *Featherstone.*, 10 Cal.App.5th at 1169 (holding that if an employer did not violate FEHA, the employee's claim for wrongful termination in violation of public policy necessarily fails).

## IV.    Conclusion and Order

For the reasons stated, IT IS HEREBY ORDERED as follows:

1.      Defendant CBI's motion for summary judgment, filed on July 19, 2018, is GRANTED;

2.      Judgment shall be entered in favor of Defendant CBI and against Plaintiff Ryan Brown; and

3.      This terminates the action in its entirety and the Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated:   **October 4, 2018**              /s/ *Barbara A. McAuliffe*
                                                  UNITED STATES MAGISTRATE JUDGE

24